**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Dr. Karen Malleus, | : | Civil Action No. |
| Plaintiff | : | |
| v. | : | |
| Dr. John J. George, | : | |
| In his individual capacity, | : | |
| Dr. Jill M. Hackman, | : | |
| In her individual capacity, | : | |
| Dr. Jeffrey A. Conrad, | : | |
| In his individual capacity, | : | |
| Lancaster Newspapers, Inc., | : | |
| Cindy Stauffer, | : | |
| Intelligencer Journal/Lancaster | : | |
| New Era Editor  Doe,  and | : | |
| Sunday News Editor Doe, | : | |
| Defendants | : | Jury Trial Demanded |

**VERIFIED COMPLAINT**

Plaintiff, Dr. Karen Malleus, by and through her counsel, brings this action for monetary damages, declaratory and injunctive relief and any other equitable relief the Court deems appropriate against Dr. John J. George, in his individual capacity as a Warwick School District Administrator, Dr. Jill M. Hackman in her individual capacity as a Warwick School District Administrator, Jeffrey A. Conrad, in his individual capacity, Lancaster Newspapers, Inc., Cindy Stauffer, Intelligencer Journal/Lancaster Editor  Doe,  and Sunday News Editor Doe to vindicate her rights under the United States Constitution and Pennsylvania Law and in support thereof, states the following:

**INTRODUCTION**

Dr. Karen Malleus lives in the Warwick School District.  At all relevant times stated in this complaint, Dr. Malleus was a mother of a Warwick student, a Great Aunt of a past and present Warwick student, a school Board member of Warwick School District, and a small business owner of an optometric practice located in the Warwick School District.  The

Defendants in this action acted in concert to defame Dr. Malleus and to intentionally interfere with her privacy, family and community relationships.

## II.   JURISDICTION

1.   The jurisdiction of this Court over Counts 1 & 2 of this controversy is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that this District Court has original jurisdiction of all civil actions arising under the laws of the United States.

2.   The jurisdiction of this Court over Counts 3 through 6 of this controversy is based upon supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).   The laws of the Commonwealth of Pennsylvania apply to Counts 3 through 6.

## III.   VENUE

3.   Venue is appropriate in this district pursuant to §28 U.S.C. § 1391(b) in that Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## IV.   PARTIES

5.   Dr. Karen Malleus ("Plaintiff Malleus") is an adult public servant and private citizen with family relationships and a business that has been harmed by the actions of the Defendants.

6.   Dr. John J. George ("Defendant George") is an adult, who was the Warwick School District ("WSD") Superintendent from June 2006 through June 2008.  He is presently employed by Berks County Intermediate Unit.  At all times herein Defendant George acted under color of state law. He is being sued in his individual capacity.

7.   Dr. Jill M. Hackman, ("Defendant Hackman") is an adult, who was the Director of Pupil Services and later the Acting Assistant WSD Superintendent until June 2009.  She is

presently employed by Berks County Intermediate Unit.  At all times herein Defendant Hackman acted under color of state law. She is being sued in her individual capacity.

8. Jeffrey A. Conrad, ("Defendant Conrad") is an adult, who presently serves on the Warwick School District School Board and as the Chair of the Warwick Area Republican Committee.  At all times herein Defendant Conrad acted under color of state law. He is being sued in his individual capacity.

9. Lancaster Newspapers, Inc., ("Defendant Lancaster Newspapers") is a private corporation that employs Cindy Stauffer, Intelligencer Journal/Lancaster New Era Editor Doe, and Sunday News Editor Doe.  Defendant Lancaster Newspaper is solely responsible for the publication of its articles and editorials.

10. Intelligencer Journal/Lancaster New Era Editor Doe, ("Defendant Intelligencer Editor Doe") is an individual who authored an editorial in the Defendant Lancaster Newspaper without investigating the facts upon which its editorial was based and maliciously published defamatory and untrue statements that placed Plaintiff Malleus in a false light.

11. Sunday News Editor Doe, ("Defendant Sunday Editor Doe") is an individual who authored an editorial in the Defendant Lancaster Newspaper without investigating the facts upon which its editorial was based and maliciously published defamatory and untrue statements that placed Plaintiff Malleus in a false light.

**V.   FACTUAL ALLEGATIONS**

   **A.  WARWICK SCHOOL DISTRICT ADMINISTRATORS FAIL TO REPORT SUSPECTED CHILD ABUSE**

12. In January 2006, two Warwick School District ("WSD") students saw a WSD teacher hugging a student.  One of the student witnesses was Plaintiff Malleus' grandniece, who reported the observation to Plaintiff Malleus, and WSD school personnel.

13. Plaintiff Malleus also reported her grandniece's observation to then WSD Superintendent Dr. Stephen A. Iovino. An internal investigation ensued.

14. Defendant George was the WSD Assistant Superintendent when the child abuse allegations were made and the investigation started.

15. Both Dr. Stephen A. Iovino and Defendant George were school administrators for the purposes of the Child Abuse Reporting Statute of Pennsylvania.  23 Pa.C.S.A. § 6351.

16. On information and belief, Dr. Stephen A. Iovino consulted WSD Board Special Counsel, Clarence Kegel, an attorney with the law firm of Kegel, Kelin, Almy & Grimm ("KKAG") about the actions he was required to take under the law.

17. On information and belief, neither Defendant George, nor Superintendent Iovino reported the child abuse allegations to the local police, ChildLine, the Lancaster County Children and Youth Agency or the Lancaster County District Attorney as required by law.

18. On information and belief, Defendant George participated in a meeting(s) with the WSD teacher accused of inappropriate behavior, wherein the teacher was not suspended or formally disciplined.

19. On information and belief, there were no further allegations against the WSD teacher until January 2008.

   **B.  DEFENDANT GEORGE RETALIATES AGAINST PLAINTIFF MALLEUS FOR HER INVOLVEMENT IN HIS PROFESSIONAL PERFORMANCE REVIEW PLAN.**

20. In July 2006 Dr. Stephen A. Iovino retired from the WSD and the Board appointed Defendant George to serve as superintendent of WSD.

21. Plaintiff Malleus served as the chair of the Labor and Management Committee of the Board and the Chief Negotiator for WSD.

22. Plaintiff Malleus had frequent and private discussions with WSD teachers about their negative experiences with Defendant George.  Plaintiff Malleus brought some of these concerns to Defendant George's attention and she shared the same concerns with the WSD Board Executive Personnel Committee.

23. In November 2007, at the behest of Plaintiff Malleus, the WSD Board President Jay Hostetter called a WSD Board Executive Personnel Committee meeting where the members decided to place Defendant George on a performance improvement plan ("probation").  Defendant George would have to successfully complete probation in order to continue his employment as Superintendent of the WSD.

24. On information and belief, then WSD Board Vice President, Kathryn Ketterman, informed Defendant George of the WSD Board decision and informed him that Plaintiff Malleus was to blame for his probation.

25. Defendant George' performance worsened, e.g., Defendant George yelled at Plaintiff Malleus over the phone; Defendant George screamed at President Hostetter; and Defendant George signed Plaintiff Malleus' name to a letter without her authorization.

26. On information and belief, Defendant George decided to look for other employment.

27. On information and belief, Defendant George was upset by Plaintiff Malleus' senior role on the WSD Board and her supervision of his work at the WSD.

28. On information and belief, Kathryn Kettterman stated, "We need to discredit Jay and Karen so John can continue as Superintendent of Warwick School District."

29. Two months later, in January 2008,  the same WSD teacher the WSD administration investigated in January 2006 was caught engaging in sexual relations with the same WSD student.

30. On information and belief, shortly after the WSD teacher was arrested the parents of the victim sent a demand letter to Defendant George.

31. On information and belief, Defendant George contacted the WSD Board legal counsel, Howard Kelin with KKAG law firm and informed him of the demand letter.

32. On information and belief, the parents of the victim sought legal counsel from Attorney David Dye, an attorney with the law firm of Clymer & Musser (n/k/a Clymer, Musser, Brown & Conrad, P.C.).

33. On information and belief, the parents of the victim directed their legal representative, Attorney David Dye, to send a demand letter to Defendant George and the WSD wherein Attorney Dye set forth the potential liability created by WSD Administration's prior acts.

34. On information and belief, Defendant George received the demand and asked Attorney Kelin to conduct an investigation and to focus the investigation on several areas, including Plaintiff Malleus and President Hostetter's involvement in the teacher abuse allegations in 2006.

35. On information and belief, Attorney Kelin knew that his law partner at KKAG, Clarence Kegel, advised WSD Administration during the 2006 investigation and that any investigation of the 2006 process would include investigation of his partner's attorney-client contacts with WSD Administration.

36. On information and belief, Attorney Kelin of KKAG knew that Pennsylvania Law requires school administrators to report suspected child abuse.

37. On information and belief Attorney Kelin of KKAG knew that his law partner at KKAG had not advised WSD Administration to report the suspected child abuse.

38. On information and belief, Defendant George asked Attorney Kelin to remove Plaintiff Malleus and Jay Hostetter from the WSD Board meeting while he asked the Board to vote to direct Attorney Kelin to complete an investigation of the 2006 incident.

39. Defendant George confirmed the WSD Board action in an email to Plaintiff Malleus dated March 5, 2008, which is attached and incorporated herein as Exhibit A.

40. On information and belief, on or about March 25, 2008, Defendant George convinced the WSD Board to hold a special election and remove Jay Hostetter as President of the WSD Board and elect Kathryn Ketterman as President of the WSD Board.

41. On information and belief, on or about March 25, 2008, Defendant George convinced newly elected WSD Board President Kathryn Ketterman to remove Plaintiff Malleus from her WSD Board leadership roles.

42. On information and belief, WSD Board President Kathryn Ketterman had a conversation with another Board Member where she said, "Karen Malleus and Jay Hostetter are running the school district and they have to be stopped!"

43. Plaintiff Malleus agreed to cooperate with the WSD Board investigation because she believed Attorney Kelin when he said the WSD Board report (**"Confidential KKAG Report"**) would be complete, unbiased and confidential.

44. Plaintiff Malleus was concerned about confidentiality because her family member first raised the allegation of abuse.

45. On information and belief, Attorney Kelin interviewed witnesses including his law partner, Attorney Clarence Kegel, who could not recall the particulars of his advice to WSD administration.

46. Attorney Kelin of KKAG law firm interviewed Plaintiff Malleus in order to complete a report to the WSD Board.

47. Attorney Kelin never gave Plaintiff Malleus an opportunity to read his draft report and make correction or provide specifics or details to the report.

48. The night before Attorney Kelin delievered the ***Confidential KKAG Report*** to the WSD Board he called Plaintiff Malleus and read small portions of the report to her.

49. Plaintiff Malleus informed Attorney Kelin that there inaccuracies in the ***Confidential KKAG Report.***

50. Plaintiff Malleus offered corrections and changes to her statement; however, Attorney Kelin did not include the corrections or specifics in the final ***Confidential KKAG Report*** that was delivered to the WSD Board.

51. Attorney Kelin delivered the ***Confidential KKAG Report*** to the WSD Board marked "Confidential."

52. Attorney Kelin told each WSD Board member to write their name on their copy of the ***Confidential KKAG Report***.

53. WSD Administrative staff were present at the distribution of the ***Confidential KKAG Report***, including Defendant George, among others.

54. Attorney Kelin collected all copies the ***Confidential KKAG Report*** at the end of the same meeting and he informed the WSD Board that all the copies of the ***Confidential KKAG Report*** would be held in his office at the KKAG law firm.

55. Plaintiff Malleus had an expectation of privacy in the ***Confidential KKAG Report***.

56. Plaintiff Malleus went to the law office KKAG and secured her copy of the ***Confidential KKAG Report***.

57. On information and belief, Defendant George directed Attorney Kegel of the law firm of KKAG to draft a ***confidential attorney-client opinion letter*** (***"KKAG confidential opinion letter"***).

58. The ***KKAG confidential opinion letter*** accused Plaintiff Malleus and WSD Board President Jay Hostetter of acting inappropriately during the 2006 investigation.

59. On information and belief, a conflict of interest existed in the fact Attorney Kelin investigated his own law partner's actions or in actions during the 2006 investigation.

60. The ***KKAG confidential opinion letter*** never pointed out the conflict of interest that existed in the fact Attorney Kelin investigated his own partner's action or inactions during the 2006 investigation.

61. The ***KKAG confidential opinion letter*** falsely accused Plaintiff Malleus of acting inappropriately, but never cited any legal authority to support its bald assertions.

62. The ***KKAG confidential opinion letter*** did not point out the fact the WSD Administration, including Defendant George, had an obligation to report suspected child abuse.

63. The ***KKAG confidential opinion letter*** never disclosed that the school board members do not have the same legal obligation to report child abuse as school administrators.

64. After reading the ***KKAG confidential opinion letter,*** Plaintiff Malleus sought legal counsel.

65. The ***KKAG confidential opinion letter*** cited the ***Confidential KKAG Report*** in reaching its conclusions, which was incomplete and in error.

66. On April 15, 2008, through her attorney, Plaintiff Malleus sent a demand letter to the WSD Board and Defendant George warning them that the public release of the

*Confidential KKAG Report* and/or *KKAG confidential opinion letter* would result in defamation of her character and harm her family and business relationships, as well as her reputation in the community.

67. Negotiations between Plaintiff Malleus and the WSD Board continued relating to maintaining the confidentiality of the *Confidential KKAG Report* and the *KKAG confidential opinion letter* as well as Plaintiff's Malleus' continued role on the WSD Board.

68. On information and belief, Defendant George was upset that Plaintiff Malleus did not resign from the WSD Board after the *Confidential KKAG Report* and the *KKAG confidential opinion letter* were released to the WSD Board.

69. During the Spring of 2008, Plaintiff Malleus' oldest son was employed by WSD.

70. On information and belief, Defendant George directed Robert Lombardo, the then Assistant Superintendent, to terminate Plaintiff's son's employment with WSD.

71. Although Plaintiff Malleus suffered severe emotional trauma as a result of the foregoing events, she remained on the WSD Board as a public servant.

72. On information and belief, sometime in the Spring of 2008, cloaked with the authority of his role as the Superintendent of WSD, Defendant George went to KKAG and secured a copy of the *Confidential KKAG Report* and the *KKAG confidential opinion letter*.

73. On information and belief, Defendant George shared the *Confidential KKAG Report* and the *KKAG confidential opinion letter* with Defendant Hackman.

74. On information and belief, Defendant George announced he was leaving the WSD in the Spring of 2008.

### C.  DEFENDANT HACKMAN CONSPIRED WITH DEFENDANT CONRAD AND DEFENDANT GEORGE TO RELEASE CONFIDENTIAL INFORMATION ABOUT PLAINTIFF MALLEUS.

75.  On information and belief, Defendant George and Defendant Hackman worked together for years before coming to WSD and are close personal friends outside of the WSD environment.

76.  Defendant Hackman continued to work for WSD after Defendant George left the WSD.

77.  On information and belief, Defendant George asked that Defendant Hackman be appointed Assistant Superintendent of WSD right before he left the district.  At this time the WSD Board did not agree with Defendant George's recommendation.

78.  Defendant Hackman continued her employment with WSD as the Acting Assistant Superintendent.

79.  On information and belief, while serving as the Acting Assistant Superintendent at WSD, Defendant Hackman had access to the ***Confidential KKAG Report*** and the ***KKAG confidential opinion letter.***

80.  On information and belief, Defendant Hackman serves on the Warwick Area Republican Committee with Defendant Conrad.

81.  On information and belief, Defendant Hackman is close personal friends with Defendant Conrad.

82.  On information and belief, Defendant Hackman's family vacations with Defendant Conrad's family.

83.  On June 28, 2008, Kathryn Ketterman received an email from Defendant Conrad time stamped 12:23 a.m., wherein Defendant Conrad wrote on behalf of the Warwick Area Republican Committee requesting a copy of the ***Confidential KKAG Report***.  A copy of the email is attached and incorporated herein as Exhibit B.

84.  The email stated that the reason Defendant George left the WSD was because of the actions of WSD Board members.

85.  On information and belief, Defendant Conrad's reference to WSD Board members was an indirect reference to Plaintiff Malleus and Jay Hostetter.

86.  On information and belief, the June 28, 2008 email was sent immediately prior or during a joint family vacation Defendant Conrad's family was having with Defendant Hackman's family.

87.  On August 5, 2008, Plaintiff Malleus was in a WSD Board Executive Committee Meeting where Defendant Hackman was present.  During the session the members discussed Defendant Conrad's email request.

88.  Within two hours of the close of the meeting Plaintiff Malleus received word that Defendant Conrad knew about the discussion of the members because Defendant Conrad raised objections to statements Plaintiff Malleus made at the meeting.

89.  Within two days of the meeting Plaintiff Malleus received an email from Defendant George, wherein he also referenced statements Plaintiff Malleus made at the meeting.  A copy of the email is attached and incorporated herein as Exhibit C.

90.  On information and belief, while cloaked with the authority of her role as the Acting Assistant Superintendent of WSD, Defendant Hackman informed Defendant George and Defendant Conrad about the private executive session discussion and that is why both Defendants contacted Plaintiff Malleus.

91.  Plaintiff Malleus continued to serve on the WSD Board as a senior member of the Board.

92.  In February 2009, the WSD Board decided not to promote Defendant Hackman to the permanent position of Assistant Superintendent.

93. On or about March 25, 2009, Defendant Hackman submitted her resignation letter and announced her departure from WSD in June 2009.

94. On information and belief, Defendant Hackman accepted a position with Defendant George at Berks County Intermediate Unit.

### D. DEFENDANTS HACKMAN, GEORGE, AND CONRAD ENGAGE IN A CONSPIRACY TO DEPRIVE PLAINTIFF MALLEUS OF HER FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, THE PENNSYLVANIA CONSTITUTION AND PENNSYLVANIA LAW.

95. On information and belief, Defendants Conrad, Hackman and George continued their friendships and engaged in a plan to interfere with Plaintiff's constitutionally protected substantive due process rights to privacy, her family relationships, and in her reputation.

96. On information and belief, Defendant Conrad decided to avenge his friends for the loss of their jobs at WSD and engaged in a plan to defame, embarrass Plaintiff Malleus, and interfere with her rights under the Fourteenth Amendment of the United States Constitution.

97. On information and belief, Defendants Hackman and George adopted Defendant Conrad's plan as their own.

98. On information and belief, Defendants George and Hackman made a copy of the **Confidential KKAG Report** and the **KKAG confidential opinion letter** available to Defendant Conrad for the purpose of defaming and embarrassing Plaintiff Malleus and interfering with her rights under the Fourteenth Amendment of the United States Constitution.

99. On information and belief Defendant Conrad induced Defendants George and Hackman to support him in his plan to defame and embarrass Plaintiff Malleus, and interfere with her rights under the Fourteenth Amendment of the United States Constitution.

100. On information and belief, Defendant Conrad's joint participation in the plan to defame, embarrass Plaintiff Malleus and interfere with her rights under the Fourteenth Amendment of the United States Constitution was sufficient to cloak Defendant Conrad with the authority of the state conferred upon Defendants George and Hackman.

101. On information and belief, Defendants Conrad, Hackman and George took steps in furtherance of their plan to discredit Plaintiff Malleus and agreed that Defendant Conrad would disclose the **Confidential KKAG Report**, as well as the **KKAG confidential opinion letter** as revenge for Defendant George's departure from WSD and Defendant Hackman's lost promotion.

102. On or about early November 2009, Defendant Conrad gave the **Confidential KKAG Report** and **KKAG confidential opinion letter** to Defendant Stauffer.

103. Defendant Conrad purposely described the **Confidential KKAG Report** and **KKAG confidential opinion letter** as one document and called it an "independent investigation."

104. On information an belief, Defendants Conrad, Hackman and George knew that publication of the **Confidential KKAG Report** and **KKAG confidential opinion letter** would likely defame, embarrass Plaintiff Malleus, and interfere with her rights under the Fourteenth Amendment of the United States Constitution.

E. **DEFENDANT CONRAD AND STAUFFER ACTED WITH MALICE AND INTENT TO DEFAME AND DISCREDIT PLAINTIFF MALLEUS**

105. On information and belief, Defendant Conrad told Defendant Stauffer that Plaintiff Malleus acted to protect the teacher who abused the WSD student.

106. On information and belief, Defendant Conrad made these statements to Defendant Stauffer knowing they were false and defamatory statements about Plaintiff Malleus.

107. Defendant Stauffer never fully investigated the facts of the ***Confidential KKAG Report*** and ***KKAG confidential opinion letter.***

108. Defendant Stauffer called Plaintiff Malleus on November 10, 2009 and asked her "How do you feel about harboring a child molester?"

109. Defendant Stauffer wrote two newspaper stories about the ***Confidential KKAG Report*** without revealing the facts or clearly laying out the difference between the investigative Report and the ***KKAG confidential opinion letter***.

110. On information and belief, Defendant Stauffer intentionally described the ***Confidential KKAG Report*** and ***KKAG confidential opinion letter*** as one document.

111. On information and belief, Defendant Stauffer knew that the ***Confidential KKAG Report*** was not an ***independent report*** because the same law firm that conducted the 2008 investigation also advised the WSD Administration in 2006 regarding the same incident.

112. On information and belief, Defendant Stauffer wrote the two stories without researching the facts or securing independent corroboration because she was Defendant Conrad's friend.

113. Defendant Stauffer knew or had reason to know she should investigate the matter further because Plaintiff Malleus told her that she did not harbor any child molester, and she acted in a timely and appropriate manner.

114. Defendant Stauffer wrote two stories that were printed by Lancaster Newspapers, Inc. on November 11, 2009 and November 12, 2009.

115. The November 11, 2009 article was published above the fold on the first page of the local daily newspaper and it was entitled, ***"Warwick liaison reported two years before arrest:***

*Investigation into band director case concluded two school board members acted inappropriately and should have resigned."*

116. The phrase *"Warwick liaison reported two years before arrest"* was two inches high and spread the whole way across the newspaper.

117. The November 12, 2009 article entitled *"Warwick Report Draws Mixed Reaction"* was also printed above the fold and on the first page.

118. The 11/12/2009 article falsely stated that Plaintiff Malleus and Jay Hostetter were the only WSD Board members who knew about the 2006 allegations during the time of its occurrence.

119. The 11/12/2009 article failed to point out the WSD Board member Kathryn Ketterman was also aware of the allegations brought to the WSD Administration's attention.

120. The 11/12/2009 article falsely stated that the investigation showed that Plaintiff Malleus' grandniece told her that she saw the teacher "passionately kissing" a student in 2006.

121. On Friday, November 13, 2009 the Intelligencer Journal/Lancaster New Era Editor Doe wrote an editorial using Defendant Stauffer's article as a resource.  The editorial was entitled *"Failure to Act."*

122. The November 13, 2009 *"Failure to Act"* editorial falsely stated that Plaintiff Malleus "ignored the legitimate concerns of her grandniece," which was stated as a fact and not as opinion and was not supported by either the *Confidential KKAG Report* and *KKAG confidential opinion letter*.

123. On information and belief, on Sunday, November 15, 2009, the Sunday News Editor Doe wrote an editorial using Defendant Stauffer's articles as a resource.  The editorial was entitled *"A Blind Eye."*

124. The November 15, 2009 *"A Blind Eye"* editorial falsely stated that Plaintiff Malleus

"discouraged the witnesses' account" and that they "should have let their young relatives

tell their stories without interfering…," which was stated as a fact and not as opinion and

was not supported by either the *Confidential KKAG Report* and *KKAG confidential*

*opinion letter*.

125. On information and belief, Defendant Stauffer and Defendants Lancaster Newspapers,

and the two Defendant Editor Does, acted with actual malice when the cited articles and

editorials were published to the Lancaster community.

126. The publication of these false and misleading stories and editorials resulted in actual

harm to Plaintiff Malleus, including problems within her family, loss of emotional peace

of mind, loss of income, and severe emotional distress for her and her family.

127. But for the actions of Defendant Stauffer and Defendant Lancaster Newspapers, and the

two Defendant Editor Does, Plaintiff Malleus would not have suffered emotional distress,

anguish, humiliation and loss of reputation.

**F.   DEFENDANT CONRAD ADMITS WRONGDOING AND ACKNOWLEDGES THE HARM HIS ACTIONS CAUSED PLAINTIFF MALLEUS.**

128. On information and belief, after the stories were published Defendant Conrad admitted to

a WSD Administrator that the reason he turned the *Confidential KKAG Report* and

*KKAG confidential opinion letter* over to the newspaper was to avenge his friends who

had been forced to leave WSD.

129. On November 3, 2009, Defendant Conrad was elected to the WSD Board.

130. The WSD Board has never investigated how the *Confidential KKAG Report* and the

*KKAG confidential opinion letter* were released without authorization.

131. On information and belief, as a result of Defendant Conrad's actions and because Plaintiff Malleus and Defendant Conrad are both serving on the WSD Board, the WSD Board President requested Defendant Conrad and Plaintiff Malleus meet and discuss resolution.

132. On March 12, 2010, Plaintiff Malleus attended a meeting with Defendant Conrad and others to discuss and reach a resolution.

133. At the March 12, 2010 meeting Defendant Conrad admitted he received the ***Confidential KKAG Report*** and the ***KKAG confidential opinion letter*** from school administrators.

134. On information and belief, Defendant Conrad is a licensed attorney and partner in the firm of Clymer, Musser, Brown, and Conrad, P.C., the same law firm that represented the student victim and sent a demand letter to Defendant George and WSD.

135. Defendant Conrad admitted he knew the ***Confidential KKAG Report*** was confidential and that the ***KKAG confidential opinion letter*** was privileged communication between an Attorney Kegel and his client, the WSD Board.

136. At the March 12, 2010 meeting an attendee asked Defendant Conrad why he gave the ***Confidential KKAG Report*** and ***KKAG confidential opinion letter*** to the Defendant Lancaster Newspapers and Defendant Conrad admitted ***"I did it to expose a festering sore that was still present in the District."***

137. At the March 12, 2010 meeting Defendant Conrad stated, "Superintendent George spoke with me and informed me that there was a cover up."

138. At the March 12, 2010 meeting Defendant Conrad stated, "He was told by the highest authority in the district that there was a cover up. I could not tolerate a cover-up; it would be my duty to expose it."

139.  Plaintiff Malleus shared how the newspaper stories and editorials harmed her emotionally, financially, socially, professionally and her family relationships.

140. Defendant Conrad apologized for the pain he caused, but refused to offer any restorative relief such as, a public statement, reimbursement for attorney fees, reimbursement for counseling fees, and reimbursement for lost business.

### JURY DEMAND

141. Plaintiff herein demands a trial by jury of all issues herein.

### CAUSES OF ACTION

### COUNT ONE

**42 U.S.C. §1983 - SUBSTANTIVE DUE PROCESS RIGHT TO PRIVACY**
**DR. MALLEUS V. DR. JOHN J. GEORGE, IN HIS INDIVIDUAL CAPACITY, DR. JILL M. HACKMAN, in HER INDIVIDUAL CAPACITY AND JEFFREY A. CONRAD, IN HIS INDIVIDUAL CAPACITY**

142. Plaintiff incorporates by reference all preceding paragraphs.

143. Plaintiff has a constitutional right to privacy as to the disclosures of the details of her personal family life and intimate relationships.

144. Plaintiff had a reasonable expectation of privacy in the ***Confidential KKAG Report*** and the ***KKAG confidential opinion letter*** given its confidential nature, purpose, scope, and detail of her familial relationship with her family members.

145. Plaintiff's right to be let alone extended to the ***Confidential KKAG Report*** and the ***KKAG confidential opinion letter***.

146. Defendants George and Hackman acted under color of state law to deprive Plaintiff of her federally protected right to privacy when they made the ***Confidential KKAG Report*** and the ***KKAG confidential opinion letter*** available to Defendant Conrad.

147. Defendant Conrad entered into an agreement with Defendants George and Hackman to unlawfully disclose the *Confidential KKAG Report* and the *KKAG confidential opinion letter* to coerce Plaintiff Malleus from her Board Position.

148. Defendants George and Hackman knew it was unlawful to provide the *Confidential KKAG Report* and the *KKAG confidential opinion letter* to Defendant Conrad.

149. Defendants George and Hackman knew they were abusing their authority as state actors when they provided the *Confidential KKAG Report* and the *KKAG confidential opinion letter* to Defendant Conrad.

150. Defendant Conrad agreed to obtain the *Confidential KKAG Report* and the *KKAG confidential opinion* from Defendants George and Hackman for the agreed upon purpose of providing these Reports to Defendant Stauffer.

151. Defendant Conrad unlawfully provided the *Confidential KKAG Report* and the *KKAG confidential opinion letter* to Defendant Stauffer.

152. Defendant Conrad, Defendant George and Defendant Hackman had an agreement to coerce Plaintiff Malleus from public office by publicizing Plaintiff Malleus' family involvement in the investigation and by placing her role in the incident in a false and defamatory light.

153. Defendant Conrad, Defendant George and Defendant Hackman acted with intent and the unlawful practice engaged in by Defendants was willful and in deliberate disregard for Plaintiff Malleus' federally protected right to privacy.

154. As a direct and proximate result of Defendant Conrad, Defendant George and Defendant Hackman's conduct, Plaintiff Malleus incurred damages, costs, attorney fees, and expenses.

## COUNT TWO

### 42 U.S.C. §1983 - CIVIL RIGHTS CONSPIRACY
### DR. MALLEUS V. DR. JOHN J. GEORGE, IN HIS INDIVIDUAL CAPACITY, DR. JILL M. HACKMAN, IN HER INDIVIDUAL CAPACITY AND JEFFREY A. CONRAD, IN HIS INDIVIDUAL CAPACITY.

155. Plaintiff Malleus incorporates by reference all previous paragraphs.

156. Defendants entered into an agreement to unlawfully violate Plaintiff Malleus' constitutional right to privacy.

157. Defendant Conrad entered into the agreement with Defendant George, Hackman, and Stauffer to violate Plaintiff Malleus's constitutional right to privacy.

158. Defendants George and Hackman were state actors at all times relevant herein and while acting as school officials they unlawfully gave the *Confidential KKAG Report* and the *KKAG confidential opinion letter* to Defendant Conrad pursuant to the Defendants' agreement to violate Plaintiff's constitutional right to privacy.

159. Defendant Conrad gave the *Confidential KKAG Report* and the *KKAG confidential opinion letter* to Defendant Stauffer.

160. Defendants knew the *Confidential KKAG Report* and the *KKAG confidential opinion letter* were confidential and unlawfully agreed to provide it to Defendant Stauffer.

161. Defendant Stauffer knew the *Confidential KKAG Report* and the *KKAG confidential opinion letter* was obtained unlawfully.

162. Defendant Conrad, Defendant George and Defendant Hackman knew the *Confidential KKAG Report* and the *KKAG confidential opinion letter* contained intimate information about Plaintiff's family relationships.

163. Defendant Conrad, Defendant George and Defendant Hackman acted with intent and the unlawful practice engaged in by Defendants was willful or reckless and in deliberate disregard for Plaintiff Malleus' federally protected rights.

164. As a direct and proximate result of Defendant Conrad, Defendant George and Defendant Hackman's conduct, Plaintiff Malleus incurred damages, costs, attorney fees, and expenses.

COUNT THREE

STATE CLAIM OF DEFAMATION
11/11/2009 & 11/12/2009 DEFENDANT STAUFFER ARTICLES
DR. MALLEUS V. LANCASTER NEWSPAPERS INC. AND CINDY STAUFFER

165. Plaintiff Malleus incorporates all previous paragraphs by reference.

166. Defendant Stauffer authored and published a newspaper article on 11/11/2009 and 11/12/2009 about Plaintiff Malleus.

167. Defendant Intelligencer Journal/Lancaster New Era Editor Doe supervised Stauffer and the publication of Defendant Stauffer's 11/11/2009 and 11/12/2009 articles.

168. Defendant Lancaster Newspapers Inc. published Stauffer's 11/11/2009 and 11/12/2009 articles about Plaintiff Malleus.

169. The 11/11/2009 and the 11/12/2009 Defendant Stauffer articles contained defamatory and false statements concerning Plaintiff Malleus.

170. Defendant Lancaster Newspapers and Defendant Stauffer abused the Fair Reporting Privilege because the published defamatory statements were not "accurate and complete" and the "spin" of the article was misleading.

171. Defendant Lancaster Newspapers and Defendant Stauffer forfeited any Fair Reporting Privilege because a reasonable person could not conclude that the 11/11/2009 and

11/12/2009 articles did not carry a materially greater sting than the ***Confidential KKAG Report.***

172. Defendant Lancaster Newspapers and Defendant Stauffer acted maliciously and in reckless disregard for the truth contained within the investigative ***Confidential KKAG Report***.

173. Due to the publication of the 11/11/2009 and 11/12/2009 articles, Plaintiff Malleus suffered harm to her reputation, emotional distress, mental anguish, humiliation, and financial loss to her business.

COUNT FOUR

DEFAMATION – 11/13/2009 EDITORIAL
DR. MALLEUS V. LANCASTER NEWSPAPERS INC., INTELLIGENCER JOURNAL/
LANCASTER NEW ERA EDITOR DOE AND CINDY STAUFFER

174. Plaintiff Malleus incorporates all previous paragraphs by reference.

175. Defendant Intelligencer Journal/Lancaster New Era Editor Doe authored the 11/13/2009 Editorial ***"A Failure to Act."***

176. The November 13, 2009 ***"Failure to Act"*** editorial falsely stated that Plaintiff Malleus "ignored the legitimate concerns of her grandniece," which was stated as a fact and not as opinion and was not supported by either the ***Confidential KKAG Report*** and ***KKAG confidential opinion letter***.

177. ***"A Failure to Act"*** contained further defamatory statements that the ***Confidential KKAG Report*** concluded that Plaintiff Malleus should have resigned her position because she could not act in the best interest of WSD.

178. Defendant Lancaster Newspapers Inc. published the 11/13/2009 Editorial ***"A Failure to Act."***

179. Defendants abused the Fair Reporting Privilege because the published defamatory statements were not "accurate and complete" and Defendants' attributed false conclusions to the ***Confidential KKAG Report*** and intentionally put Plaintiff Malleus in a false light.

180. Defendants' abused the Fair Reporting Privilege because the 11/13/2009 editorial would not cause a reasonable person to conclude that the editorial did not carry a materially greater "sting" than the actual ***Confidential KKAG Report***.

181. Defendants acted maliciously and in reckless disregard for the truth contained within the ***Confidential KKAG Report***.

182. On information and belief, Defendant Cindy Stauffer assisted Defendant Intelligencer Journal/Lancaster New Era Editor Doe in writing the 11/13/2009 ***"A Failure to Act"*** editorial.

183. Due to the publication of the editorial, Plaintiff Malleus suffered harm to her reputation, emotional distress, mental anguish, humiliation, and financial loss to her business.

### COUNT FIVE

### DEFAMATION – 11/15/2009 EDITORIAL
### DR. MALLEUS V. LANCASTER NEWSPAPERS INC., CINDY STAUFFER AND THE SUNDAY NEWS EDITOR DOE

184. Plaintiff Malleus incorporates all previous paragraphs by reference.

185. Defendant News Editor Doe authored and published the 11/15/2009 editorial ***"A Blind Eye."***

186. Defendant Lancaster Newspapers Inc. published the 11/15/2009 Editorial ***"A Blind Eye."***

187. The November 15, 2009 ***"A Blind Eye"*** editorial falsely stated that Plaintiff Malleus "discouraged the witnesses' account" and that they "should have let their young relatives

tell their stories without interfering…," which was stated as a fact and not as opinion and was not supported by either the ***Confidential KKAG Report*** and ***KKAG confidential opinion letter***.

188. Defendants Lancaster Newspapers Inc., Cindy Stauffer and the Sunday News Editor Doe acted maliciously and in reckless disregard for the truth contained within the ***Confidential KKAG Report*** and intentionally placed Plaintiff Malleus in a false light.

189. Defendants Lancaster Newspapers Inc., Cindy Stauffer and the Sunday News Editor Doe abused the Fair Reporting Privilege because the published defamatory statements were not "accurate and complete" and Defendants' attributed false conclusions to the ***Confidential KKAG Report*** and intentionally put Plaintiff Malleus in a false light.

190. On information and belief, Defendant Cindy Stauffer assisted Defendant Intelligencer Journal/Lancaster New Era Editor Doe in writing the editorial.

191. Due to the publication of the editorial, Plaintiff Malleus suffered harm to her reputation, emotional distress, mental anguish, humiliation, and financial loss to her business.

## COUNT SIX

### CIVIL CONSPIRACY TO DEFAME
### DR. KAREN MALLEUS V. JEFFREY A. CONRAD

192. Plaintiff Malleus incorporates all previous paragraphs by reference

193. Defendant Conrad entered into an agreement with Defendants George and Hackman to unlawfully disseminate the ***Confidential KKAG Report*** and ***KKAG confidential opinion letter*** to defame Plaintiff Malleus.

194. Defendant George and Defendant Hackman unlawfully provided the ***Confidential KKAG Report*** and ***KKAG confidential opinion letter*** to Defendant Conrad.

195. Defendant Conrad unlawfully provided the ***Confidential KKAG Report*** and ***KKAG confidential opinion letter*** to Defendant Stauffer.

196. Defendant Stauffer publicized defamatory statements in articles authored by her in the Lancaster Intelligencer on 11/11/2009 and 11/12/2009.

197. Defendant Conrad acted intentionally, recklessly, and with malice aforethought to harm Plaintiff Malleus.

198. Due to the acts of Defendant Conrad's conspiracy with Defendant Hackman and Defendant George to defame Plaintiff Malleus, she suffered distress, mental anguish, humiliation, and financial loss to her business as well as harm to her reputation in the community.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant George, Defendant Hackman, and Defendant Conrad jointly and severally as follows:

a.   For a declaratory judgment that Defendants' actions complained of herein violated Plaintiff's federal constitutional right to privacy;

b.   For a money judgment including monetary damages exceeding $150,000 representing compensatory damages and monetary loss suffered by Plaintiff;

c.   For punitive damages;

d.   For pre-judgment interest;

e.   For reasonable attorneys' fees on Plaintiff's federal civil rights causes of action under 42 U.S.C. §1983;

f.   For expert witness fees and costs; and

g.   For such other relief as the Court deems just and appropriate.

**WHEREFORE**, Plaintiff respectfully prays for judgment against Defendant Lancaster Newspapers, Inc., Defendant Cindy Stauffer, Defendant New Era Editor Doe, and Defendant Sunday News Editor Doe jointly and severally for:

a.   Declaratory relief of a publicized retraction and apology;

b.   For compensatory damages exceeding $150,000 representing compensatory damages and monetary loss suffered by Plaintiff;

c.   For punitive damages;

d.   For pre-judgment interest;

e.   For costs;

f.   For such other relief as the Court deems just and appropriate.

Respectfully submitted,

𝄞 **TRIQUETRA LAW ®**

Dated: <u>March 24, 2010</u>

Sharon R. López
PA 70605
35 East Orange Street, Suite 301
Lancaster, PA  17602
(717)  299-6300 (Telephone)
(717)  299-6300 (Fax)
Lopez@TriquetraLaw.com

## VERIFICATION

I verify that the information contained in the answers to interrogatories is true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. Section 4904, relating to unsworn falsification to authorities.


Date : 3-24-10

Karen Malleus