IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. KAREN MALLEUS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 10-1357 |
| | : | |
| DR. JOHN J. GEORGE, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                 **August 5, 2010**

Plaintiff Dr. Karen Malleus contends Defendants John George, Jill Hackman, and Jeffery Conrad (Individual Defendants) violated her 14th Amendment right to privacy by disclosing a statement she made as part of a confidential investigation, and Defendants Cindy Stauffer, Lancaster Newspapers, Inc., Intelligencer Journal/Lancaster New Era Editor Doe, and Lancaster Sunday News Editor Doe (Newspaper Defendants) defamed her by falsely reporting on her statement.[1] The Individual Defendants ask this Court to dismiss Malleus's claims, arguing she does not have a constitutionally protected privacy interest in the disclosed information. The Newspaper Defendants ask this Court to dismiss Malleus's state law defamation claims because this Court does not have original jurisdiction over such claims. For the following reasons, this Court will grant Defendants' motions to dismiss.

**FACTS**[2]

Malleus is a member of the Warwick District Board of School Directors. In January 2006,

---

[1] Intelligencer Journal/Lancaster New Era Editor Doe and Lancaster Sunday News Editor Doe were not named in the pleadings.

[2] When deciding a motion to dismiss under Rule 12(b)(6), courts "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

1

Malleus's grand-niece, a Warwick School District student, witnessed a teacher hugging a high school student. She reported her observations to Malleus and school personnel who conducted an internal investigation. After concluding the investigation, the school district chose not to discipline the teacher. Two years later, in January 2008, the teacher who was the subject of the 2006 investigation engaged in sexual conduct with the same student, and the teacher was arrested. Shortly after his arrest, the student's parents send a demand letter to former School District Superintendent John George, who subsequently retained counsel.

The School Board asked the District's legal counsel, Howard Kelin, of the firm Kegel, Kelin, Almy and Grimm, LLP (KKAG) to explore whether the school was liable for its decision not to discipline the teacher in 2006. The Board directed Kelin to conduct an investigation which focused on the involvement of Malleus and other individuals in the original investigation. Malleus agreed to speak to Kelin because he guaranteed their conversation would be confidential. Malleus told Kelin that, in 2006, she told school officials about her grand-niece's observations and had expressed her concerns about her grand-niece's ability to relate what she had seen accurately because her grand-niece had a vivid imagination and a tendency to exaggerate or falsely construe events she observed. Kelin created a report, titled the KKAG Report (the Report), with the results of his inquiry.

At a March 2008 board meeting, the School District Board reviewed the Report.[3] At the end

---

[3] The parties did not attach the KKAG Report to the pleadings, but it was given to this Court during oral arguments on June 28, 2010. The Report is integral to the pleadings because the information contained in the report forms the basis of Malleus's claims. In deciding a motion to dismiss, a court may rely on a document extraneous to the pleadings which was integral or relied upon in the pleadings. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (citation

of the meeting, Kelin collected each copy of the Report and secured them in his office. Malleus admits she obtained her own copy of the report from Kelin's office and alleges George obtained a copy of the Report from Kelin's office as well. She alleges former School District Acting Assistant Superintendent Hackman also had access to the Report.[4] She contends George directed Attorney Kegel to prepare a confidential attorney-client opinion letter which opined that Malleus acted inappropriately during the 2006 investigation.[5] In April 2008, Malleus sent a demand letter to the School Board and George stating that the public release of the report and letter would defame her character and damage her family and business relationships. Negotiations followed between Malleus and the school board regarding the confidentiality of the documents.[6]

As background, Malleus states she had a contentious relationship with George. In 2007, after numerous teachers complained about him and at Malleus's request, the School Board placed George on probation. Malleus alleges in the spring of 2008, George directed the assistant superintendent to terminate Malleus's son's employment in the Warwick School District in retaliation for Malleus continued service on the school board, despite George's wish she resign.

In June 2008, the Chairman of the Warwick Area Republican Committee, Jeffrey Conrad, e-mailed the School Board and asked for a copy of the KKAG Report, asserting that the Warwick

---

and internal quotation marks omitted). The report included statements Malleus made about her niece's lack of credibility. It also contained statements from the former superintendent that one of the reasons the district did not pursue the matter was because of the credibility issues raised by Malleus.

[4] George left the school district in 2008. In 2008, Hackman was appointed acting assistant superintendent. Hackman's position never lost its interim status and she resigned in 2009.

[5] The Court was not provided with a copy of the opinion letter.

[6] The complaint did not include the outcome of these negotiations.

taxpayers deserved to know what was going in the schools. He also raised concerns regarding the resignation of George and accused the School Board of involvement in his departure. Malleus alleges either George or Hackman transmitted a copy of the Report and the confidential opinion letter to Conrad. In November 2009, Conrad sent the Report and opinion letter to members of the press including the Newspaper Defendants.[7] Conrad also allegedly told Defendant Stauffer that Malleus protected the teacher who had sexual relations with the student.

After receiving the Report, Defendant Cindy Stauffer wrote two newspaper articles discussing the Report's contents, and writing the Report revealed Malleus had acted inappropriately in her reporting of her grand-niece's observation and stating the report concluded Malleus should resign from the school board. Additionally, two editorials decried Malleus's actions. An Intelligencer Journal/Lancaster New Era editorial, *Failure to Act*, opined Malleus "ignored the legitimate concerns of her grandniece," and a Lancaster Sunday News editorial, *A Blind Eye*, suggested Malleus "should have let [her] young relative[] tell [her] story without interfering." Compl. ¶¶ 122, 124.

On March 24, 2010, Malleus filed the instant complaint. She brings 42 U.S.C. § 1983 claims against George, Hackman, and Conrad, asserting first that their disclosure of the Report, which included her statement, violated her Fourteenth Amendment right to privacy and second, that the defendants conspired to violate her constitutionally protected privacy right. Malleus also brings Pennsylvania defamation claims against Stauffer, Lancaster Newspaper Inc., Intelligencer Journal/Lancaster New Era Editor Doe, and Lancaster Sunday News Editor Doe, based on the

---

[7] In November 2009, Conrad was elected to the School District Board. At a March 2010 meeting, Conrad admitted he sent the Report and opinion letter to the media "to expose a festering sore that was still present in the district." Compl. ¶ 136.

4

articles published. She also brings a claim against Conrad for conspiracy to defame. All seven defendants filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[8]

**DISCUSSION**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, a court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Defendants argue Malleus's complaint should be dismissed because she does not have a constitutionally protected privacy interest in the statements she made about her grand-niece. The Fourteenth Amendment protects two types of privacy rights. The first is "the individual interest in avoiding disclosure of personal matters." *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000) (citing *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977)). The second is "the interest in independence in

---

[8] Defendant George and Hackman filed a joint motion to dismiss the claims arguing Malleus does not have a constitutionally protected privacy interest in her statement. Conrad filed a separate motion to dismiss on the same grounds. The Newspaper Defendants are jointly represented and filed a joint motion to dismiss, arguing the Court does not have original jurisdiction over the defamation claims because Malleus does not have a constitutionally protected privacy interest which provides for supplemental jurisdiction. They also argued that if the Court finds a privacy interest, there is still no jurisdiction over Malleus's state claims because the federal and state claims do not derive from the same nucleus of operative fact.

5

making certain kinds of important decisions." *Id.* The latter category of "important decisions" is limited to "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir.1980) (citing *Paul v. Davis*, 424 U.S. 693, 713 (1976)). The first category is a right to confidentiality, and the second category is a right to autonomy. *See Doe v. Delie*, 257 F.3d 309, 317 n.5 (3d Cir. 2001) ("Some courts have referred to the first category as a 'right to confidentiality,' to distinguish it from the right to autonomy and independence in personal decision making."). The first category protects against disclosure of certain personal information, including information containing specific "details of one's personal life," *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 208 (3d Cir. 1991); information "which the individual is ordinarily entitled to retain within the private enclave where he may lead a private life," and information containing "intimate facts of a personal nature." *Westinghouse*, 638 F.2d at 577 (3d Cir. 1980) (citation omitted). Malleus's claimed privacy interest falls into the first category because she protests the disclosure of her statements and not an invasion into her autonomy or personal decision making.

To determine whether information is entitled to privacy protection, courts conduct a two-step analysis. First a court determines if the information in question qualifies for privacy protection. *Doe v. Se. Pa. Transp. Auth. (SEPTA)*, 72 F.3d 1133, 1137 (3d Cir. 1995) ("As a preliminary matter, [a] court must decide if a person's [claimed information] . . . is within the ambit of information protected by the Constitution."). Second, if the information is protected, a court must then determine if legitimate government or public policy interests warrant intrusion into the protected interest. *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 110 (3d Cir. 1987) ("Disclosure may be required if the government interest in disclosure outweighs the individual's

privacy interest.").

In the first step, a court examines the type of information and determines whether an individual has a reasonable expectation of confidentiality in such information. *C. N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 178 (3d Cir. 2005). "The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny."[9] *Id.* If the type of information is not protected by a clearly established privacy interest, a court must determine "whether the contours of current law put a reasonable defendant on notice that his conduct would infringe on the plaintiff's asserted right." *Gruenke v. Seip*, 225 F.3d 290, 302 (3d Cir. 2000).[10]

Malleus argues the information contained in the report warrants constitutional protection, because she had a reasonable expectation of confidentiality, based on Kelin's assurance the report was confidential.[11] Recognized privacy interests protect either an intimate aspect of a person's

---

[9] An expectation of confidentiality may "arise from custom, privileges, laws or regulations proscribing or circumscribing disclosure of particular personal information which reflect a societal judgment that these matters should be accorded confidentiality." *Seneca v. New Hope Borough*, No. 01-2307, 2002 WL 321663, at *7 (E.D. Pa. Feb. 27, 2002).

[10] For example, courts protect the privacy of an individual's medical information, including prescription drug information, medical records, and pregnancy status. *See e.g. Westinghouse*, 638 F.2d at 579 (holding individuals have a protected interest in their medical records); *Gruenke*, 225 at 302 (holding a minor's pregnancy status is constitutionally protected because it is within the recognized ambit of medical information). Courts also protect HIV status and sexual orientation. *See e.g. SEPTA*, 72 F.3d at 1138 (holding an individual has a protected privacy interest in his HIV status); *and Sterling v. Borough of Minersville*, 232 F.3d 190, 196-97 (3d Cir. 2005) (holding sexual orientation is entitled to privacy protection because it constitutes an intimate aspect of an individual's personality). Courts also recognize there is sometimes a privacy interest in an individual's home address. *See e.g. Paul P. v. Verniero*, 170 F.3d 396, 404 (3d Cir. 1999) (holding there is a "nontrivial" privacy interest in an individual's home address because of state and federal statutes which prevent access to home addresses).

[11] Malleus points to no case law which constitutionally protects confidentiality agreements made between two individuals. Although the breach of a confidentiality agreement is a potential tort, equity or contract claim, it is not a recognized constitutional injury.

identity or a personal fact about an individual which he might not want to be public. *Westinghouse*, 638 F.2d at 577. Malleus's case, however, is distinguishable from other cases which protect individual privacy interests because the information she seeks to keep private is not as sensitive as the types of information previously protected. The Third Circuit has not expanded protected privacy interests beyond medical information, sexual orientation, or HIV status. Such protected interests all contain facts about an individual's physical or behavioral characteristics. Thus, a statement about a family member's observations is not intimate or sensitive enough to qualify for protection.

The second step requires the Court to conduct a balancing test, weighing the privacy interest against governmental or public concerns warranting disclosure.[12] *Westinghouse*, 638 F.2d at 578 ("[W]e must engage in the delicate task of weighing competing interests."). "[P]ublic [policy] concerns may justify access to information an individual may desire to remain confidential." *Ridgewood*, 430 F.3d at 179 (citing *Westinghouse*, 638 F.2d at 578); *see e.g. Paul P. v. Verniero*, 170 F.3d 396, 404 (3d Cir. 1999) (holding a convicted sex offender's home address is not entitled to privacy protection because the government's interest in preventing future sex offenses outweighs the claimed privacy interest). To balance the public interest in disclosure against an individual's privacy rights, courts consider the following nonexclusive factors:

> [T]he type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of [the public's] need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

---

[12] If a court determines the information does not warrant protection, there is no need to balance the competing interests. *SEPTA*, 72 F.3d at 1137 ("If there is no right to privacy, our inquiry stops.").

*Ridgewood*, 430 F.3d at 179-80 (citing *Westinghouse*, 638 F.2d at 578). Although Malleus has alleged harm to her business, reputation, and family relationships as a result of the disclosure, injury from disclosure is only one of many factors. The disclosed statement was part of a school district investigation into a teacher's inappropriate contact with a minor student. This is a matter of great public concern and members of the community have an interest in the actions taken by the Board. The public's strong interest in investigations of a public school teacher's sexual misconduct with a student outweighs any privacy interest Malleus has in the statement she made about what her grand-niece witnessed.

In sum, the information disclosed does not qualify for constitutional privacy protection, and even if it did, the public interest in this information permits its disclosure. Without a recognized privacy interest, Malleus's § 1983 claims fail.[13] This Court declines to exercise supplemental jurisdiction over Malleus's state law claims.

An appropriate order follows.

---

[13] Generally, "[w]hen a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). In this case, amendment would be futile because Malleus's claims are all premised on the contention that the information contained in the KKAG report is constitutionally protected.